UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CIVIL ACTION |
| THE MATTER OF 27551 SOUTH LAZY MEADOW WAY SPRING, TEXAS 77386 | 20-258-SDD-SDJ |

### RULING

Local Rule 7(f) of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty-one (21) days after service of the motion.

In the present case, a *Motion to Dismiss*[1] was electronically filed by the United States ("the Government") on August 26, 2020. A review of the record shows that an opposition was due on September 16, 2019; thus, well more than twenty-one (21) days have elapsed since the filing of this motion, and no memorandum in opposition has been submitted to date, and no extension of time has been filed by Martrell Harris ("Harris").

Therefore, this *Motion* is deemed to be unopposed, and further, after reviewing the record, the Court finds that the *Motion* has merit as a matter of law.

### I.   FACTUAL BACKGROUND

On April 30, 2020, the Government filed a Verified Complaint for Forfeiture In Rem against 27551 South Lazy Meadow Way, Spring, Texas 77386 (the "property").[2] On June

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 1.
64770                                                                                                                                  1

26, 2020, a Notice of Complaint for Forfeiture was filed into the record, and service was subsequently attempted on Martrell Harris via regular mail and certified mail.[3] The notice identified Harris as a "person who reasonably appears to be a potential claimant" and advised that any person claiming an interest in the property who has received direct notice of this forfeiture action must file a claim within thirty-five days. Notice was also sent to Harris' counsel, advising that "any person who asserts an interest in the defendant property must file a verified claim by August 7, 2020."

On August 7, 2020, Harris filed a verified claim to the property, stating: "I am the owner of record of the above listed property and as such have claim to the property."[4] In the section seeking documentary support for his interest in the property, he claimed, "[n]o documents are presently available as they will be obtained from the appropriate courthouse and other records and will be provided to supplement this claim as soon as possible."[5] A declaration signature appears on the claim purporting to be that of Martrell Harris and is dated August 4, 2020.[6] On August 25, 2020, through counsel, Harris filed a *Motion to Stay Civil Proceeding Pursuant to 18 U.S.C. § 981(g)(2)* requesting a stay of any further proceedings in this matter until further order of this Court.[7]

According to a Warranty Deed in Montgomery County, Texas, the property was purchased on January 21, 2015, by a sole purchaser - Harris.[8] According to the

---

[3] Rec. Doc. No. 6.
[4] Rec. Doc. No. 8.
[5] Rec. Doc. No. 8-1, p. 3.
[6] *Id.* at p. 5.
[7] Rec. Doc. No. 10.
[8] Rec. Doc. No. 11-4.

64770

2

Montgomery County Tax Assessor's Office, the 2019 Year Tax Statement tax assessment for the property was addressed to only Harris.[9]

On December 7, 2019, an arrest warrant for Martrell Antonio Harris for first degree murder was signed by Commissioner Nicole Robinson, 19th Judicial District Court, State of Louisiana.[10] One of the allegations therein is that Harris paid cash and drugs to another individual to murder the victim. After the warrant was issued, law enforcement initiated efforts to arrest Harris, which were unsuccessful.

In early February 2020, law enforcement officers executed a federal search warrant at the property, Harris' residence, but he was not there. When the U.S. Marshal Service learned that Harris was scheduled for a flight into Houston in early 2020, they arranged to meet him; however, Harris never boarded the plane. On April 17, 2020, an episode of Live PD Wanted aired on A&E, which highlighted and further publicized efforts by law enforcement to apprehend Harris. The U.S. Marshal Service has attempted to locate Harris at all addresses associated with him. Harris has changed phones multiple times. Despite these efforts, law enforcement has been unable to apprehend Harris. However, Harris has stated a claim to the property in this civil proceeding.

## II.   FUGITIVE DISENTITLEMENT STATUTE

The Government moves to dismiss Harris' claim to the property, arguing that as a fugitive, he should not be permitted to contest a forfeiture and receive a stay so the property remains unadjudicated. The Government relies on the Fugitive Disentitlement

---

[9] Rec. Doc. No. 11-5.
[10] Rec. Doc. No. 11-6.
64770                                                                                                                          3

Statute to support this motion. The Fugitive Disentitlement Statute, codified at 28 U.S.C. § 2466(a), provides as follows:

> (a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person--
>
> (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution--
> (A) purposely leaves the jurisdiction of the United States;
> (B) declines to enter or reenter the United States to submit to its jurisdiction; or
> (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
> (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

The Government contends that, "[b]y remaining a fugitive for nearly eight to nine months, Martrell Harris is 'otherwise evading the jurisdiction of the court' and is not confined or being held anywhere else. 'The [fugitive disentitlement] doctrine is grounded in the notion that it is improper to permit a fugitive to pursue a claim in federal court where he might accrue a benefit, while simultaneously avoiding an action of the same court that might sanction him.'"[11] The Government relies on the five prerequisites to disentitlement as set forth by the Second Circuit in *Collazos v. United States*.[12] The *Collazos* court noted

---

[11] Rec. Doc. No. 12, p. 3 (quoting *United States v. All Funds on Deposit at Old Mut. of Bermuda Ltd. Contract No. CX4011696 in Bermuda*, 2014 WL 1758208, at *4 (S.D. Texas, May 1, 2014) (quoting *United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051 (9th Cir.2013)); *see also United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338*, 617 F. Supp. 2d 103, 125 (E.D.N.Y. 2007) (the court disentitled the fugitive, who fled to Canada to avoid arrest because, as a fugitive from justice, the claimant "has demonstrated disrespect for the legal process that he has no right to call upon the court to adjudicate his claim.")).
[12] 368 F.3d 190 (2d Cir.2004).

64770                                                                                                                      4

that 28 U.S.C. § 2466 addressed the "unseemly spectacle" of "a criminal defendant who, facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction."[13]  The five prerequisites to disentitlement identified in *Collazos* are:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension;
> (2) the claimant must have had notice or knowledge of the warrant;
> (3) the criminal case must be related to the forfeiture action;
> (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and
> (5) the claimant must have deliberately avoided prosecution by
> > (A) purposefully leaving the United States,
> > (B) declining to enter or reenter the United States, or
> > (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.[14]

Notably, Section 2466 does not mandate disentitlement where the statutory requirements are satisfied; rather, "the ultimate decision whether to order disentitlement in a particular case rests in the sound discretion of the district court."[15]

The Government contends that, as a fugitive, Harris satisfied all requirements under the Fugitive Disentitlement Statute.  First, an arrest warrant for Harris was issued. Second, Harris had notice of knowledge of the arrest warrant.  Third, the criminal case is

---

[13] *Id.* at 200.
[14] *Id.* at 198; *see also All Funds on Deposit at Old Mut. of Bermuda Ltd. Contract No. CX4011696 in Bermuda*, 2014 WL 1758208, at *4 (S.D. Texas, May 1, 2014).
[15] *Id.*

related to this forfeiture action.  Fourth, Harris is not confined or otherwise being held in another jurisdiction. And fifth, Harris is deliberately evading the jurisdiction of this Court.[16]

The Court agrees, and, despite having counsel in this matter who has filed pleadings on behalf of Harris, Harris has not responded in any way to this motion, as required by the Local Rules of this Court, to challenge or controvert the factual allegations or legal analysis presented by the Government.  Therefore, under Rule 7(f), the Government's facts and argument are deemed unopposed.  The Court's independent analysis of same also persuades the Court that the Government's motion is substantively meritorious.

Further, the Court agrees with the Government that a motion to dismiss is the proper procedural vehicle under the circumstances of this case.  "The proper procedure is not to strike [claimant's] claim and enter a default judgment … but rather to dismiss [claimant's] claim."[17] "Essentially every court to have considered a disentitlement case … has treated the motion as something like a motion to dismiss, has looked at matters outside the pleadings, and has, where appropriate, allowed for the possibility of conversion to summary judgment."[18]

---

[16] *See* Rec. Doc. No. 12, pp. 5-8.  Because this motion is unopposed, the Court adopts by reference the specific arguments and supporting jurisprudence submitted by the Government as uncontroverted.
[17] *United States v. $1,278,795.00 (One Million Two Hundred Seventy Eight Thousand Seven Hundred Ninety Five Dollars) U.S. Currency*, 2006 WL 870364, at *2 (S.D. Tex. Mar. 30, 2006).
[18] *United States v. $6,976,934.65 Plus Interest*, 478 F.Supp.2d 30, 38 (D.D.C., March 21, 2007)(citations omitted).

64770                                                                                                                                                6

### III. CONCLUSION

Accordingly, the Government's *Motion to Dismiss*[19] Harris' claim is GRANTED, and his *Motion to Stay*[20] is DENIED.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana on January 11, 2021.

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[19] Rec. Doc. No. 12.
[20] Rec. Doc. No. 10.
64770